UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
CGI SOLUTIONS, LLC and WINDPATH
SAILING, INC.,

            Plaintiffs,

     – against –             05 Civ. 4120 (DAB)
                                 <u>MEMORANDUM & ORDER</u>
SAILTIME LICENSING GROUP, LLC,

            Defendant.
-----------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Plaintiffs CGI Solutions, LLC ("CGI") and WindPath Sailing,
Inc. ("WindPath") have brought an action for a declaratory
judgment pursuant to 28 U.S.C. § 2201.  The judgment they seek
would declare that Plaintiffs (1) did not misappropriate
Defendant SailTime Licensing Group, LLC's ("SailTime") trade
secrets; (2) did not infringe SailTime's copyrights; (3) did not
engage in unfair competition; (4) did not convert any of
SailTime's property; and (5) did not breach a contract with
SailTime.

    Now before the Court are several motions.  SailTime moves
pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure
to dismiss the Complaint for improper venue, or alternatively, to
transfer this action to the United States District Court for the
Western District of Texas pursuant to 28 U.S.C. § 1404(a).
Plaintiffs CGI and Windpath move to enjoin a counterpart action

filed against them by SailTime in the Western District of Texas based on the first-filed rule. Plaintiff Windpath separately has moved to compel disclosure of Defendant's "Trade Secrets" and "Confidential Information" and has moved for a Preliminary Injunction.

For the reasons contained herein, Defendant's Motion to Dismiss for Improper Venue is DENIED; Defendant's Motion to Transfer is DENIED; Plaintiffs' Motion to Enjoin Proceedings in Texas is DENIED; and Plaintiff Windpath's Motion to Compel Defendant's Disclosure and for a Preliminary Injunction is DENIED as moot.

However, for the reasons contained herein, the Court orders that this case be DISMISSED.

## I. BACKGROUND

Plaintiff CGI is a limited liability company organized under Delaware law and authorized to do business in New York. (Compl. ¶ 6.) It maintains its principal place of business in New York. Plaintiff WindPath is a corporation chartered under Connecticut law and authorized to do business in New York. (Id. ¶ 4.) Ian Treibick is the CEO of CGI, and later formed the corporation, Windpath. (Id. ¶¶ 10, 17.)

Defendant SailTime is a company organized under Texas law with its principal place of business in Austin, Texas. (Id. ¶

8.) SailTime is a "fractional sailing" business established in 2001 and based out of Austin, Texas. (Id. ¶ 9.) The business functions like a timeshare, whereby several people share use of sailboats. (Id. ¶ 22.)

In the fall of 2004 Ian Treibick contacted SailTime from CGI's New York office to express interest in becoming a base owner in the northeast region of the United States. (Compl. ¶ 13). On November 19, 2004, Treibick, allegedly on behalf of CGI, signed a Confidentiality and Nondisclosure Agreement ("Agreement") with SailTime. (Compl. ¶ 14.) The Agreement required that the receiving party – here, CGI – keep confidential any information garnered from SailTime concerning its business practices, models, and technologies, as well as its customers.[1] Moreover, a non-compete clause allegedly prohibited CGI from using any information disclosed by SailTime "to create or operate

_____

[1] Specifically, the Agreement stipulates that:
"[c]onfidential information" shall mean all information about SailTime Licensing Group's business, business plans, customers, strategies, employees, trade secrets, operations, records, finances, assets, products, manufacturing and production techniques, materials, technology, computer software and any concepts, implementation methodologies or designs relating to computer software, data and information that reveals the processes, methodologies, designs, technology or know how of a party's existing or future products, services, applications or methods of operation and other information identified by such party as proprietary or confidential, whether in writing, any other tangible form of expression or disclosed orally through virtual means."
Confidentiality and Non-Disclosure Agreement, at 3.1, in O'Toole Dec., Ex. B.

3

a time-share sailing business" if negotiations terminated. (Confidentiality and Non-Disclosure Agreement at 3.7, <u>in</u> O'Toole Dec., Ex. B.)  The Agreement contained a forum-selection clause, which specified that the laws of the State of Texas and of the United States would govern the Agreement and that "all court proceedings relating to [the] Agreement must be brought in Austin, Texas."  (<u>Id.</u> at 7.2.)  Treibick executed the document in New York and returned it by fax to SailTime's Texas office. (Compl. ¶¶ 14-15.)

Sometime during the subsequent weeks, CGI declined to enter into a licensing agreement with SailTime.  (Compl. ¶ 16.) Following the termination of licensing negotiations with SailTime, Treibick formed WindPath to operate a fractional sailing business in Connecticut.  (Compl. ¶ 17.)  SailTime allegedly learned of the existence of WindPath through its website. (Compl. ¶ 19.)

On April 5, 2005, an attorney for the law firm representing SailTime sent Treibick written notice demanding that he immediately "(1) take down the Windpath.com website, and any other website that incorporates SailTime's confidential information and trade secrets, [and] (2) cease any and all marketing and promotion activities that use any information disclosed to [him] by SailTime." (Letter to CGI and Ian Treibick from Brian J. O'Toole, dated April 5, 2005, at 2, <u>in</u> Pls.' Mot to

Enjoin Tex. Proceeding, Ex. A.) The letter further demanded that Treibick provide to SailTime certain proprietary information within ten days from the date of the letter. [2] (Id.) The letter warned Plaintiffs that, if they did not cease and desist their alleged misconduct, SailTime would pursue "all civil remedies," which could include "fil[ing] a lawsuit seeking injunctive relief and civil damages for breach of contract, conversion, theft of trade secrets, copyright infringement, unfair competition, or other causes of action." (Id.)

On April 26, 2005, CGI and WindPath filed a declaratory judgment suit against SailTime in this Court, seeking declarations that: (1) Plaintiffs did not misappropriate

---

[2] That letter demanded of Plaintiffs the following information:

  (a) The identity (name, address and phone number) of all persons or entities to whom you have forwarded emails or any other communications sent to you by SailTime;

  (b) The identity of all other individuals involved in your business (i.e. the business described on the Windpath.com website), whether as an employee, contractor, investor, advisor, or otherwise;

  (c) Complete copies of any advertising or publication you have authorized that promotes the business described on the Windpath.com website, including any advertised phone numbers;

  (d) The identity of all prospects who have contacted you are any other individual involved in your business about opening a Windpath base or becoming a "Windpath base owner;"

  (e) The identity of all press contacts with whom you have discussed the business described on the Windpath.com website;

  (f) The identity of the person or entity hosting the Windpath.com website.

Id.

SailTime's trade secrets; (2) Plaintiffs did not infringe SailTime's copyrights; (3) Plaintiffs did not engage in unfair competition; (4) Plaintiffs did not convert any of SailTime's property; and (5) Plaintiffs did not breach a contract with SailTime. On May 3, 2005, SailTime, the Defendant named in this declaratory judgment action, filed suit against CGI, WindPath, and Ian Treibick in the United States District Court for the Western District of Texas, Austin Division. The Texas action and the action filed here are based on the same transaction and require a determination of mirror-image claims.[3]

SailTime now moves to dismiss the declaratory judgment action pending in this Court for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or alternatively, to transfer this action to the Western District of Texas pursuant to 28 U.S.C. § 1404(a). CGI and WindPath have moved this Court to enjoin SailTime's action in Texas based upon the first-filed rule. Finally, Plaintiff Windpath also has moved this Court to compel disclosure of the trade secrets and confidential information that SailTime alleges have been exploited, and for a preliminary injunction.

---

[3] In the Texas case, SailTime has requested relief under the following theories: (1) misappropriation of trade secrets and unjust enrichment; (2) breach of contract; (3) civil conspiracy; and (4) request for temporary and permanent injunctive relief. (SailTime v. Treibick, No. 05-0319, Compl. at 6-7, in Memo. of Law in Support of Pls.' Mot. to Enjoin Tex. Proceeding, Ex. C.)

## II. <u>DISCUSSION</u>

### A.    <u>Plaintiffs' Motion to Enjoin the Texas Proceeding</u>

Plaintiffs move this Court to enjoin the Texas proceeding, arguing that their declaratory judgment action was filed in New York first.  The first-filed rule provides that "[w]here an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action."  <u>Meeropol v. Nizer</u>, 505 F.2d 232, 235 (2d Cir. 1974).  The rule "gives priority to the first-filed suit except where there are special circumstances which justify giving priority to the second-filed suit or a showing of a balance of circumstances favor[s] the second-filed suit."  <u>J. Lyons & Co., Ltd. v. Republic of Tea, Inc.</u>, 892 F. Supp. 486, 490 (S.D.N.Y. 1995).  <u>See also</u> <u>Adam v. Jacobs</u>, 950 F.2d 89, 92 (2d Cir. 1991); <u>Factors Etc., Inc. v. Pro Arts, Inc.</u>, 579 F.2d 215, 218 (2d Cir. 1978), <u>cert. denied</u> 440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979) (special circumstances counseling against application of the first-filed rule exist when "inequitable conduct, bad faith, or forum shopping" motivated the commencement of the first-filed action), <u>overruled on other grounds by</u> <u>Pirone v. MacMillan, Inc.</u>, 894 F. 2d 579 (2d Cir. 1990).  This Court finds not only that such special circumstances exist in the present case, but also that a balancing of other circumstances and

conveniences in the litigation counsels against enjoining the second-filed action.

Anticipatory filings constitute a special circumstance permitting departure from the first-filed rule. Schnabel v. Ramsey Quantitative Systems, 322 F. Supp. 2d 505, 511-12 (S.D.N.Y. 2004). Courts in this circuit have held that when a party sends a notice-of-suit letter to its opponent, and the opponent thereby files a declaratory judgment action, there is reason to find that the first-filed action is an anticipatory filing. Factors Etc., 579 F.2d at 219 (letter stating defendant would be subject to litigation for injunctive relief, damages and an accounting if defendant did not stop selling infringing product provided defendant with notice of suit); J. Lyons & Co., 892 F. Supp. at 490-91; Federal Ins. Co. v. May Dep't Stores Co., 808 F. Supp. 347, 350 (S.D.N.Y. 1992) (letter stating that lawsuit would be filed if claim was not satisfied by a specific date provided party with notice of suit). See also Amerada Petroleum Corp. v. Marhsall, 381 F.2d 661 (5th Cir. 1967) (letter stating that plaintiff would bring suit against defendant in a jurisdiction where it was subject to service, without providing a specific deadline, gave sufficient notice of plaintiff's intent to file suit). Cf. Employers Ins. Of Wausau v. Prudential Ins. Co., 763 F. Supp. 46, 49 (S.D.N.Y. 1991) (letter asserting that

party "hoped to avoid litigation" failed to sufficiently notify the opposing party of intent to litigate).

SailTime delivered a notice-of-suit letter to CGI and Treibick just before Plaintiffs filed their Complaint in this suit. In a letter dated April 5, 2005, SailTime's attorney demanded certain information from Plaintiffs so that SailTime could determine the extent of damages caused by Plaintiffs' alleged misconduct. "You should also know," SailTime's attorney wrote, "that SailTime views [CGI and Windpath's conduct] as an extremely serious matter, and will pursue all civil remedies available to it if necessary . . . . Sailtime may file a lawsuit seeking injunctive relief and civil damages for breach of contract, conversion, theft of trade secrets, copyright infringement, unfair competition or other causes of action." (Letter to CGI Solutions and Ian Treibick from Brian J. O'Toole, dated April 5, 2005, at 2, in Pls.' Mot. to Enjoin Def.'s Tex. Action, Ex. A.)

These words indicated SailTime's resolve to bring suit against Plaintiffs. While SailTime's letter did not outright announce that it would be filing suit by a particular date, it bore greater resemblance to the notice-of-suit letter in Factors Etc. than to the letter in Employers Insurance. In Factors Etc., the Second Circuit deemed sufficient a notice-of-suit letter that stated that the opposing party would be "subject to a lawsuit for

injunctive relief, damages and an accounting" unless they discontinued sales of the infringing product, <u>Factors Etc.</u>, 579 F.2d at 217, 219; whereas in <u>Employers Insurance</u>, the district court found that a letter asserting merely that the party "hoped to avoid litigation" did not warn the opposing party of the specter of litigation, <u>Employers Ins.</u>, 763 F. Supp. at 49.

SailTime's April 5, 2005 letter to Plaintiff was not a tepid declaration of its 'hopes to avoid litigation'; rather, SailTime, like the plaintiff in <u>Factors Etc.</u>, intimated its resolve to bring a lawsuit if CGI and Windpath did not cease and desist their alleged misconduct.  SailTime also delineated very specific claims, including "injunctive relief and civil damages for breach of contract, conversion, theft of trade secrets, copyright infringement [and] unfair competition". (O'Toole's April 5, 2005 Letter, at 2.)  This Court holds that SailTime's April 5, 2005 letter sufficiently notified Plaintiffs of its resolve to sue.

Even were SailTime's letter intended to initiate a more amiable, non-litigious resolution with Plaintiffs, SailTime should not be barred from seeing to the end its second-filed action:

> Where a party is prepared to pursue a lawsuit, but
> first desires to attempt settlement discussions, that
> party should not be deprived of the first-filed rule's
> benefit simply because its adversary used the resulting
> delay in filing to proceed with the mirror image of the
> anticipated suit.  Otherwise, potential plaintiffs

> would be discouraged from first attempting to resolve
> their claims without resorting to litigation.

<u>Elbex Video, Ltd. v. Tecton, Ltd.</u>, 2000 WL 1708189 S.D.N.Y. 2000)

(<u>quoting</u> <u>Ontel Products, Inc. v. Project Strategies Corp.</u>, 899 F.

Supp. 1144, 1150 (S.D.N.Y. 1995)). Penalizing SailTime for not

having filed suit within three weeks of its April 5, 2005 letter

would contravene the judiciary's policy of encouraging settlement

between adversaries.

Balancing the other circumstances in this litigation also

advises against enjoining the Texas action. Nothing indicates

that this declaratory judgment action could be decided sooner or

more efficiently than the litigation in the pending Texas

litigation. Moreover, Plaintiffs in the instant case lodged

their grievances with this Court by way of a Complaint, rather

than by proposing an Order to Show Cause or by requesting a

Preliminary Injunction, either of which would have indicated to

the Court that this matter was one warranting urgent review.

That Plaintiffs initiated this action with a mere complaint

suggests that they filed first so that they could choose a forum

for SailTime, not so that their legal rights could be adjudicated

once and for all.[4]

---

[4] The Court's discussion of the Declaratory Judgment Act, <u>see</u>
Part II.C, <u>infra</u>, also is of primary relevance in its decision to
decline to enjoin the Texas proceeding.

Accordingly, Plaintiffs' Motion to Enjoin the Texas Proceeding is hereby DENIED.

**B.    Defendant's 12(b)(3) Motion to Dismiss for Improper Venue**

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for improper venue.  An action is properly venued where, among other places, "a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. 1391(a)(2).

Defendant's Motion to Dismiss this action for improper venue is without merit.  Plaintiffs allege that "a substantial part of the events giving rise to the claim occurred and had a substantial impact in New York." (Compl. ¶ 3.)  Treibick allegedly researched his fractional sailing venture in part by conducting telephone conversations with individuals at SailTime from CGI's offices in New York City.  (Id. ¶ 10-12.)  The Complaint additionally asserts that CGI executed the Non-Disclosure Agreement in New York City.  (Id. ¶ 15.)  The combination of these allegations meets the requirements of 28 U.S.C. § 1391(a)(2), and therefore cannot justify dismissing the Complaint for improper venue.  See Polizzi v. Cowles Magazine, 345 U.S. 663, 665-66 (1955) (permitting a district court to dismiss for improper venue if the chosen venue fails to satisfy the standard set forth by the relevant venue statute).

SailTime alleges that the parties agreed to bring any dispute arising under the Non-Disclosure Agreement in Austin, Texas.  This forum-selection clause, SailTime asserts, controls the parties' choice of venue.  But even if this Court were to deem the forum-selection clause enforceable, such clauses do not receive consideration when determining whether to dismiss a case for improper venue.  "The fact that parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract . . . ."  Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F. Supp. 2d 393, 404-405 (S.D.N.Y. 2000) (quoting Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc., 825 F. Supp. 671, 679 (D.N.J. 1993)) (internal quotations omitted).  Existence of a forum-selection clause does not authorize dismissal where venue otherwise is properly laid.  Licensed Practical Nurses, 131 F. Supp. 2d at 405-06.

Accordingly, Defendant's 12(b)(3) Motion to Dismiss for Improper Venue is hereby DENIED.

## C.  Defendant's Motion to Transfer under 28 U.S.C. § 1404(a)

Defendant alternatively has moved to transfer this action to the Western District of Texas, Austin Division.  According to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any district or division where it might have been brought." This Court finds that transfer to the Western District of Texas would be improper.

Transferring venue of a case requires a district court to consider several factors:

> (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice.

Schnabel v. Ramsey Quantitative Systems, Inc., 322 F. Supp. 2d 505, 515 (S.D.N.Y. 2004). Very little information is before this Court regarding these factors, especially information about witnesses and the conveniences of the parties. What information this Court does have indicates that New York is CGI's principal place of business, that Windpath is authorized to do business in New York, and that Defendant SailTime is a company organized in Texas. Neither these allegations nor anything else on the record provides the Court with a solid ground for transferring this case to the Western District of Texas.

What is more, the mirror-image of this declaratory judgment action already has been filed in the Western District of Texas. To transfer this largely repetitive case to that district would

duplicate that tribunal's work.  Accordingly, Defendant's Motion to Transfer Venue is hereby DENIED.

D.    <u>Dismissal under the Declaratory Judgment Act, 28 U.S.C. §
      2201(a)</u>

Plaintiffs have brought their Complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  Allowing this action to proceed here, however, would contravene the purposes of the Declaratory Judgment Act and would encourage forum-shopping.[5]

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  This statute grants discretionary jurisdiction to courts to grant or deny relief rather than provide a litigant with an "absolute right" to an adjudication of claims.  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 287, 115 S. Ct. 2137, 2142, 132 L. Ed. 2d 214 (1995) (quoting <u>Public Serv. Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237, 241, 73 S. Ct. 236, 97 L. Ed. 291 (1952)).  The Second Circuit has explained that a declaratory judgment may be rendered where it

_____

[5] While the parties did not specifically brief this legal issue, all the facts and documents necessary to make this decision of law already are before this Court.

"will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969), cert. denied, 397 U.S. 1064, 90 S. Ct. 1502, 25 L. Ed. 2d 686 (1970) (quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941)).

Broadview stated that a declaratory judgment action should be entertained if either of the two objectives could be achieved, and that failure to do so was an error. 417 F.2d at 1001. However, recent district court cases in this circuit have held that a court's discretion is not "constricted or guided solely by these two criteria." Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 433 (S.D.N.Y. 2002); see also Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 585 (S.D.N.Y. 1990); accord Wilton, 515 U.S. at 286-87 ("[S]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion . . . . The statute's textual commitment to discretion and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.").

"Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its

discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." <u>Wilton</u>, 515 U.S. at 288 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Id.</u> It would be "futile" for "a district court, knowing at the commencement of litigation that it will exercise its broad statutory discretion to decline declaratory relief, [to] nonetheless go through the futile exercise of hearing a case on the merits first." <u>Id.</u> at 287.

Courts face competing equitable concerns where an adversary files a coercive suit in another venue shortly after the filing of a declaratory action that embraces the same claims. While a declaratory judgment may provide faster relief, "the federal declaratory judgment is not a prize to the winner of the race to the courthouses." <u>Factors Etc., Inc. v. Pro Arts, Inc.</u>, 579 F.2d 215, 219 (2d Cir. 1978), <u>cert denied</u>, 440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979) (<u>quoting</u> <u>Perez v. Ledesma</u>, 401 U.S. 82, 119 n.12 (1971) (Brennan, J. dissenting)). "Even if the basic requirements for a declaratory judgment action are met, it is still within the discretion of the district court to decline to hear a declaratory judgment action, particularly when there is a pending proceeding in another court, state or federal, that

will resolve the controversies between the parties."  <u>Great American Ins. Co. v. Houston Gen.</u>, 735 F. Supp. 581, 584 (S.D.N.Y. 1990).

Based on "the litigation situation as a whole," Plaintiffs' declaratory action should be dismissed.  <u>Great American Ins. Co.</u>, 735 F. Supp. at 585 (dismissing declaratory judgment action where suit embracing the same claims was pending elsewhere).  True, Plaintiffs in this case filed their action before SailTime filed suit in Texas.  But not more than a week passed between these two filings.  Nothing about either action indicates that the declaratory judgment action before this Court could resolve the parties' legal relationship and rights any sooner than would the Texas action.  <u>See</u> <u>Hartford Acc. & Indem. Co. v. Hop-On International Corp.</u>, 568 F. Supp. 1569, 1574 (S.D.N.Y. 1983) (finding that where a pending action could be "resolved as completely, fairly, and quickly" as a declaratory judgment action, the latter properly may be dismissed).

Indeed, one of the Declaratory Judgment Act's chief purposes is to help the party who seeks the declaratory judgment to "avoid accrual of avoidable damages . . . and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued."  The present case warrants no such early adjudication.  SailTime filed suit only a week after Plaintiffs filed their declaratory judgment action.

For two cases embracing the same claims to proceed simultaneously through the federal court system would be a complete waste of judicial resources.

Moreover, CGI and Windpath made this Court aware of its grievances using a Complaint, rather than using a proposed Order to Show Cause, a Motion for a Preliminary Injunction, or some other pleading which might have suggested an urgency of the underlying matter. Plaintiffs' primary concern seems to have been the forum in which this matter would be litigated, not the duration or urgency of the litigation. Declaratory judgment actions are not meant to permit parties who fear the looming incubus of litigation to dodge a particular forum. See Factors Etc., 579 F.2d at 219. Plaintiffs shall not be permitted to do so here.

This Court also finds it telling that Treibick, on behalf of CGI, executed the Confidentiality and Non-Disclosure Agreement, thereby indicating Plaintiffs' consent to be bound by a Texas forum and by Texas law. The Court holds that Treibick's execution of that Agreement is yet another reason why this case should be dismissed from this Court.

In determining whether a contract not executed by both parties is meant to be binding, "[t]he court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been

partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed in writing."). <u>Winston v. Mediafare Entertainment Corp.</u>, 777 F.2d 78 (2d Cir. 1985). <u>See also</u> <u>Railroad Mgt Co., LLC v. CFS Louisiana Midstream Co.</u>, 2005 WL 2471037, at *6 (5th Cir. 2005) (<u>citing</u> <u>Haws & Garrett Gen. Contractors, Inc v. Gorbett Bros. Welding Co.</u>, 480 S.W.2d 607, 609 (Tex. 1972) ("An implied contract is formed where the mutual intent to be bound is inferred from the conduct of the parties under the circumstances.").

Treibick's signature on the Agreement indicates Plaintiffs' intent to be bound by the Agreement. There is no indication that the parties expressly reserved the right not to be bound in the absence of the execution of a writing. Treibick formed Windpath – a fractional sailing enterprise – after discussing fractional sailing operations with SailTime. (Compl. ¶¶ 14-17.) Nothing in the Agreement points to remaining terms not yet agreed upon, or to any dispute about any of the terms therein. (<u>See</u> Agreement, at 7.1 ("The Parties hereby agree that this Agreement shall constitute the entire agreement between the Parties regarding the subject matter of this Agreement.".) To the extent that Plaintiffs' declaratory judgment action and SailTime's Texas action depend on the Agreement, it is clear that Treibick

consented to litigation in Texas.  This is yet another reason for the Court to dismiss the case before it, and allow the Texas case embracing the same issues to proceed on the merits.

This Court finds that proceeding with the declaratory judgment action in this venue would work against the interests of justice, against the judicial policy of discouraging forum-shopping, and against the purposes of the Declaratory Judgment Act.  It also would contravene what appears to have been Treibick's consent to resolve disputes under the Agreement in a Texas forum.  Accordingly, Plaintiff's declaratory judgment action hereby is DISMISSED.


E.    Windpath's Motion to Compel and for Preliminary Injunction

Plaintiff Windpath also has brought a Motion to Compel Disclosure of Defendant's "Trade Secrets" and "Confidential Information", and has moved for a Preliminary Injunction.  This Court will not consider Windpath's Motion on its merits, but rather understands that consideration of the Motion may be conducted best in the Western District of Texas, Austin Division. There, Windpath's Motion, if re-filed, may be considered alongside the counterpart lawsuit already underway in that venue.

Plaintiff Windpath's Motion to Compel Disclosure of Defendant's Trade Secrets and Confidential Information and for a Preliminary Injunction is DENIED by this Court as moot, but may

be re-filed in the Western District of Texas for consideration there.

## CONCLUSION

For the reasons stated above, this Court orders the following:

(1) Plaintiffs' Motion to Enjoin the Proceeding in the Western District of Texas is DENIED;

(2) Defendant's Motion to Dismiss for Improper Venue is DENIED;

(3) Defendant's alternative Motion to Transfer Venue to the Western District of Texas, Austin Division is DENIED;

(4) Plaintiff Windpath's Motion to Compel Disclosure of Defendant's "Trade Secrets" and "Confidential Information" and for a Preliminary Injunction is DENIED as moot.

This Court, however, orders that Plaintiff's declaratory judgment action be DISMISSED.

The Clerk of Court is hereby ordered to close this case.


SO ORDERED.

Dated: New York, New York
       *November 17*, 2005

                                    *Deborah A. Batts*
                                    Deborah A. Batts
                                    United States District Judge